UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMONTAE CALVIN,

    Plaintiff,

v.

CITY OF EASTPOINTE, et. al.,

    Defendants.

_____/

Case No. 18-10725

Honorable Nancy G. Edmunds

**ORDER AND OPINION GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [19]**

Plaintiff Damontae Calvin filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the City of Eastpointe and three Eastpointe police officers: Officer Joseph Piro, Officer Alec Mikulec, and Officer David Fortunato. Plaintiff alleges the officers violated his Fourth Amendment rights through their use of force during his arrest. He also alleges the officers conspired to violate his Fourth Amendment rights. As to the City, Plaintiff alleges the City has permitted customs, practices and policies which led to the alleged violation of Plaintiff's Fourth Amendment rights.

Pending before the Court is Defendants' motion for summary judgment. (ECF No. 19.) Defendants contend they are entitled to summary judgment because: (1) the officers' use of force was objectively reasonable and they are entitled to qualified immunity; (2) Plaintiff fails to present any evidence of a conspiracy; and (3) Plaintiff fails to present any evidence to support a claim for municipal liability against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiff opposes the motion and argues that genuine issues of material fact preclude summary judgment. On May 29, 2019, the Court

1

held a hearing in connection with Defendants' motion. For the reasons set forth below, the Court **GRANTS** the motion.

I.  **Background**

On July 9, 2017, Plaintiff was driving at night in the City of Eastpointe, Michigan when he slammed into a parked car. Accident scene photos show that after striking the parked car, Plaintiff's vehicle landed on the opposite side of the road with significant front-end damage. The parked car, which also sustained significant front-end damage, was propelled into a neighborhood resident's front lawn. According to Plaintiff, the accident occurred when he took his eyes off the road to look for his cell phone. According to Defendants, Plaintiff was very intoxicated and was driving on the wrong side of the road at the time of the accident.[1]

Although there were no witnesses of the actual collision, several witnesses observed the events leading up to Plaintiff's arrest. Immediately after the accident, Plaintiff, who was shirtless, got out of his vehicle. He was approached by some of the local residents who heard the crash and ran out of their homes. After unsuccessfully attempting to drive off in his vehicle, Plaintiff fled from the scene on foot. Plaintiff states he got out of his vehicle after the crash to search for his phone, and then fled from the scene because a man—the alleged owner of the vehicle he struck—approached him in a menacing manner causing him to fear for his safety. The resident-witnesses tell a different story. The owner of the struck vehicle, Katherine Feuquay, testified that she ran out of her house after hearing the crash. She stated that Plaintiff first tried to pretend he was not involved in the accident by

---

[1] The summary judgment evidence reflects that two hours after the crash, Plaintiff's blood alcohol level was .129. Plaintiff denied driving under the influence during his criminal proceedings, but admitted in his deposition that he was drinking hard alcohol, straight from the bottle, right before the accident.

telling her his vehicle was stolen and he was not sure what had happened; then he got back in his vehicle and tried to drive away; and when his car would not move, he took off from the scene on foot. Another resident, Katie Usndek, testified she saw Plaintiff stumble out of his vehicle, unsuccessfully attempt to get back into his vehicle to drive away, and then take off on foot as people gathered to try to prevent his flight from the scene. Other witnesses observed this sequence of events and that several of the residents attempted to prevent Plaintiff from fleeing the accident. Plaintiff claims that these witnesses, including the police officers, are not telling the truth.

The summary judgment evidence reflects that Plaintiff took off on foot from the accident scene and traversed the neighborhood through backyards and by hopping fences. Eastpointe Police were called to the scene with reports of a vehicle accident where the subject was fighting with neighbors and residents that exited their homes. Five officers, including Defendants Piro, Mikulec, and Fortunato responded. The suspect was reported as a shirtless black male with dreadlocks, wearing sweatpants. The officers pursued Plaintiff in their vehicles and on foot in and throughout the neighborhood. They chased him through backyards and over fences.

None of the officers were wearing body cameras, but their attempts to arrest Plaintiff were recorded in part by their dash cam videos. The audio and video recordings capture the officers' repeated commands to Plaintiff to get on the ground and to stop running. Eventually, Officer Piro's video shows Plaintiff emerging from behind a house on Lambrecht Street after having led the officers through the back of the neighborhood and houses for about five minutes. Plaintiff stumbles from behind the house and continues to jog for a few steps into the front lawn and away from the police. He looks out of breath and his jog turns into a slow walk for a few steps. He starts to run again

3

after he looks back and sees police lights flashing and Officer Piro closing in on him on foot. Officer Piro sprints towards Plaintiff and can be heard shouting commands at Plaintiff, but Plaintiff continues to run. Plaintiff runs a few more steps, and as Officer Piro is about to reach him, Plaintiff turns around with his hands up. As soon as Plaintiff turns, Officer Piro catches up to Plaintiff and knocks him onto a grass lawn to effect the arrest.

With Plaintiff on the ground, the officers attempt to place Plaintiff in handcuffs. It takes almost a minute, and three officers, to finally secure Plaintiff in handcuffs. The officers testified that Plaintiff disobeyed their commands to give up his hands and struggled with the officers while on the ground. According to the officers, Plaintiff tucked his arms under his body and they had to pull his arms out from under him. The officers can be heard on the video giving repeated instructions to Plaintiff to stop resisting and to give up his hands. Plaintiff claims that he was not resisting and that one of the officers punched him in the face. However, he is not sure who punched him or whether he was hit by someone's fist, elbow, or shoulder.[2] It is also not clear what injuries, if any, Plaintiff suffered as a result of being pushed to the ground and allegedly struck in the face. While Plaintiff states that he lost a tooth during this incident, there is no evidence in the record that this was caused by the officers' use of force in attempting to subdue Plaintiff as opposed to the serious car accident occurring a few minutes prior. Ultimately, Plaintiff was arrested, found guilty by a Macomb County jury for resisting arrest (among other charges), and sentenced to a prison term of two to fifteen years.

Following his arrest, Plaintiff sued the arresting officers and the City of Eastpointe

---

[2] Due to the distance and quality of the video, it is not clear whether or not this alleged punch occurred. However, it is clear that none of the officers raise their arms above their heads in a manner indicating a punch had been thrown.

under 42 U.S.C. § 1983 seeking redress for the allegedly unreasonable and excessive use of force during his arrest. Plaintiff claims that Officer Piro's takedown, the alleged punch to his face by an unknown officer during his arrest, and the pulling of his hair while being placed in the police car constitutes excessive and unreasonable force in violation of his constitutional rights. Plaintiff further alleges that the officers conspired to use excessive force and then conspired to cover up their use of excessive force. Finally, Plaintiff claims the City of Eastpointe is liable for failing to properly train and/or supervise the officers.

Defendants move for summary judgment on Plaintiff's claims. The officers argue that the force used was reasonable under the circumstances, and alternatively, that they are entitled to the protections of qualified immunity. Defendants also contend that Plaintiff has failed to present any evidence to support his conspiracy and municipal liability claims. Plaintiff opposes the motion. Plaintiff argues genuine issues of material fact exist that preclude summary judgment.

## II.     Summary Judgment Standard

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In addition,

once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment, and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

### III.  Analysis

#### A. Excessive force

Claims regarding an officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 133 (6th Cir. 2014). The determination of whether the force used to effect a particular seizure is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests and the countervailing governmental interests at stake." *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 95 (6th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). The Court must consider the totality of the circumstances presented by the particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade by flight. *Id.*

In addition, the Court analyzes the challenged conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 397). "Ultimately, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

This case primarily centers on the third factor: whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight.[3] Sixth Circuit case law recognizes that the reasonableness of an officer's use of force turns on whether the suspect is actively resisting arrest. *Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) ("This circuit—and several others—have drawn the line at the suspects active resistance."); *Brown v. Chapman*, 814 F.3d 447, 46 (6th Cir. 2016). An officer's use of force during a takedown is not an excessive use of force where the plaintiff was actively resisting arrest. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect

---

[3] The first and second factors weigh slightly against Plaintiff. The evidence establishes that Plaintiff while shirtless and driving under the influence slammed into a park vehicle, attempted to get back in his vehicle to drive away, and when his car would not start took off on foot through the neighborhood. His felony criminal conviction carried a two to fifteen year prison sentence. It was certainly reasonable for the officers to view Plaintiff as a potential threat under the facts and circumstances presented here. And given that Plaintiff had just led them on a several minute chase through a neighborhood, it was also reasonable for the officers to believe the use of force was necessary to secure Plaintiff and prevent his continued evasion.

does not resist, or has stopped resisting, they cannot."); *Bozung v. Rawson*, 439 F. App'x 513, 520 (6th Cir. 2011) (finding the defendant officer did not use excessive force by using a straight arm takedown technique to neutralize and handcuff plaintiff, or by placing his knee on the back of a suspect who was being handcuffed but was not yet neutralized).

Courts in the Sixth Circuit have found active resistance where a suspect physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed. *Thomas*, 715 Fed.App'x at 460; *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012). *See, e.g.*, *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012); *Foos v. City of Delaware*, 492 F. App'x 582, 589 (6th Cir. 2012) (suspect behaved "erratically and irrationally"); *Caie*, 485 F. App'x at 96-97 (suspect physically resisted handcuffs). But when a suspect is "compliant or ha[s] stopped resisting," the law is established that using a taser or other forceful takedown techniques constitutes excessive force. *Hagans*, 695 F.3d at 509; *see, e.g.*, *Kijowski v. City of Niles*, 372 F. App'x 595, 599-600 (6th Cir. 2010) (suspect sitting in his truck "not causing any trouble"); *Roberts v. Manigold*, 240 F. App'x 675, 676 (6th Cir. 2007) (one officer had suspect "completely pinned" while other officer used taser).

Here, the summary judgment evidence establishes the officers did not violate Plaintiff's Fourth Amendment rights when they used force to subdue him. Plaintiff was clearly actively resisting the officers' efforts to arrest him. Plaintiff eluded police officers for several minutes through the back of the neighborhood and disregarded their repeated commands. When Plaintiff eventually emerged onto the street, he looked directly at Officer Piro and took off running. Plaintiff only finally stopped running when Officer Piro was steps away from him. The video conflicts with Plaintiff's contention that he voluntarily

came to a complete stop as Officer Piro approached him. Although Plaintiff turned towards Officer Piro with his hands up—apparently indicating he was done running—it is not clear that Plaintiff would not have continued to evade had Officer Piro not utilized force to take him down. Officer Piro knocked down Plaintiff onto the grass with a single push. In doing so, he avoided subjecting Plaintiff to additional injury associated with hitting the pavement or the car directly in front of them. There is no video evidence of any weapon or device being used to subdue Plaintiff. There is no evidence of repeated strikes or gratuitous violence being inflicted on Plaintiff. Under the circumstances, Officer Piro's use of force, as depicted on the video, was objectively reasonable.

In addition, the summary judgment evidence establishes that Plaintiff continued to ignore the officers' commands even after he was brought to the ground. The officers testified that Plaintiff refused to give up his hands. The officers can be heard giving repeated instructions to Plaintiff to give up his hands so that they could place him under arrest. In the end, it took three officers working together to place Plaintiff in handcuffs and complete the arrest. The officers' use of minimal force to secure Plaintiff, including the alleged single blow to Plaintiff's head, was objectively reasonable given Plaintiff's resistance and refusal to cooperate with the officers' repeated commands.[4]

The video and audio evidence reflects that Plaintiff was actively resisting arrest when the officers utilized physical force to secure him. And a jury already found that Plaintiff was actively resisting arrest.[5] Because Plaintiff was actively resisting arrest,

---

[4] Plaintiff also fails to establish that he was actually punched by any of the officers. He admitted that he did not know whether he was hit by a fist, elbow, or shoulder, and he could not say whether the blow was intentional or merely incidental to the officers' attempts to secure him and put him in handcuffs.

[5] The Court disagrees with Defendants that *Heck v. Humphrey*, 512 U.S. 477 (1994) necessarily bars Plaintiff's excessive force claim under the facts and circumstances presented here. Under *Heck*, a plaintiff is barred from asserting a § 1983 claim that necessarily implies the invalidity of an underlying criminal conviction. 512 U.S. 477, 487

neither Officer Piro's tackle, nor the alleged blow to Plaintiff's head, constitutes an unreasonable or excessive use of force under established Sixth Circuit jurisprudence.[6] Furthermore, the officers' use of minimal force to secure Plaintiff was objectively reasonable considering the circumstances of Plaintiff's car accident, his intoxicated state, his attempts to flee, his refusal to obey the officers' commands, his struggles with the officers after being caught, the degree of force actually used, the absence of evidence of any serious physical injuries suffered by Plaintiff as a result of the officers' alleged use of force, and the inconsistencies in Plaintiff's testimony. Accordingly, the Defendant officers are entitled to summary judgment on Plaintiff's claims.

### B. Civil Conspiracy

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To prevail on a civil conspiracy claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*,

---

(1990). In the Sixth Circuit, an excessive force claim may be inconsistent or conflict with a prior conviction where (1) the criminal provision makes the lack of excessive force an element of the crime, or (2) excessive force is an affirmative defense to the crime. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). Defendants are correct that the common law right to resist an unlawful arrest can be an affirmative defense to a charge of resisting arrest under Michigan law. *See People v. Moreno*, 491 Mich. 38, 814 N.W.2d 624 (2012). But excessive force is not an affirmative defense to resisting an otherwise lawful arrest. *See Johns v. Oakland Cty.*, No. 15-CV-12924, 2016 WL 4396065, at *2 (E.D. Mich. Aug. 18, 2016) (discussing *Moreno* and rejecting the same argument made by Defendants here). Moreover, the summary judgment record does not establish which acts of resistance formed the basis of Plaintiff's criminal conviction. It is certainly possible that Plaintiff was convicted based on his fleeing from the officers and his failure to get on the ground at their command, but not based on his struggles with the officers while on the ground. Thus while Plaintiff's conviction is certainly relevant to the Court's analysis, the Court cannot find based on the record currently before it that Plaintiff is precluded from litigating whether he was actively resisting arrest at all pertinent times.

[6] To be clear, there is no evidence in the record that any of the Defendants pulled Plaintiff's hair while putting him into the police vehicle. There is also no evidence in the record that this hair pull constitutes excessive force. Thus this allegation cannot form the basis for liability here.

655 F.3d 556, 563 (6th Cir. 2011). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016).

Plaintiff alleges the Defendant officers conspired to violate his Fourth Amendment rights in two ways. First, Plaintiff claims the officers conspired to violate his Fourth Amendment rights "in planning and agreeing not to use excessive force."[7] Second, Plaintiff claims the officers conspired to violate his Fourth Amendment rights in failing to accurately report the details relating to their alleged use of excessive force on Plaintiff. To evidence the conspiracy, Plaintiff directs the Court to "[the officers] continued denial of what can be seen in the video," and "[the officers] refusal to accurately report what happened." Plaintiff argues that these two points alone could lead a reasonable juror to conclude the officers engaged in a conspiracy to violate Plaintiff's Fourth Amendment rights.

The Court disagrees. As an initial matter, the Court finds that the Defendant officers did not use excessive force and therefore there can be no conspiracy among them to cover up their purported use of excessive force. Moreover, Plaintiff's conspiracy claim fails on its merits because Plaintiff fails to present any evidence to support the existence of a conspiracy to violate his rights. There is no evidence of a single plan, no

---

[7] Plaintiff's use of the word "not" appears to be a typographical error. As literally read, Plaintiff's allegation conflicts with his primary claim—that the officers used excessive force. The Court assumes and interprets Plaintiff's claim to be that the officers allegedly conspired to use excessive force on him, and to then cover up their alleged use of excessive force, and not that the officers conspired to not use excessive force on Plaintiff.

evidence that the officers shared in a general conspirator objective, and no evidence of an overt act taken in furtherance of the conspiracy. Plaintiff has wholly failed to meet his burden to raise a genuine issue of material fact or present any actual evidence of a conspiracy. Finally, the officers cannot be liable for civil conspiracy in violation of § 1983 because they are all employees of the same government entity and are alleged to have been acting in the scope of their employment to violate Plaintiff's rights. *See Jackson v. City of Cleveland*, No. 17-3840, 2019 WL 2171462, at *16 (6th Cir. May 20, 2019) (holding as a matter of first impression that the intracorporate conspiracy doctrine applies to § 1983 claims). For these reasons, Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim.

### C. Municipal Liability

Plaintiff claims the City of Eastpointe has permitted customs, practices, or policies which led to the alleged violation of his constitutional rights. Because the Court finds that Plaintiff's constitutional rights were not violated, Plaintiff's municipal liability cannot be sustained. But even if the Court found sufficient evidence of excessive force to survive summary judgment as to the individual officers, Plaintiff's municipal liability claim against the City fails because Plaintiff does identify any evidence to support his claim.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Id.* A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with

final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The only possible options for Plaintiff here are the third or fourth. As to the third, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To prevail on a failure to train or supervise theory, the plaintiff must demonstrate either (1) "a pattern of similar constitutional violations by untrained employees and [the defendant municipality's] continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees, thus establishing the conscious disregard for the consequences of its action...necessary to trigger municipal liability," or (2) "a single violation of federal rights, accompanied by a showing that [the defendant] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins County, Kentucky*, 805 F.3d 724, 738-39 (6th Cir. 2015) (citations, quotations, and alterations omitted).

To show that a municipal defendant followed a custom of tacit inaction or tolerance of unconstitutional policy violations, the plaintiff must demonstrate "(1) a clear and persistent pattern of unconstitutional conduct by [the defendant's] employees; (2) the municipality's notice or constructive notice of the unconstitutional conduct; (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and

(4) that the policy of inaction was the moving force of the constitutional deprivation." *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018).

Here, Plaintiff's municipal liability claim appears to be based on an inadequate training theory. The complaint includes a number of generic conclusory allegations concerning the City's alleged failure to properly train its police officers, but it does not contain specific factual allegations to support the claim. In his response brief, however, Plaintiff states that the City has had to defend multiple officers on excessive force claims and that these claims were covered extensively in the news. Plaintiff does not provide the news reports or any evidence about these purported prior claims. Notwithstanding, Plaintiff argues that a reasonable juror could conclude that Eastpointe police officers were not properly trained because they allegedly continued to engage in excessive force despite the attention garnered by the alleged prior excessive force claims against the City as would be evidenced by these news reports if they were in evidence.

Plaintiff, however, fails to present any actual evidence to support his municipal liability claim based on alleged inadequate training. There is no evidence in the record about these other alleged incidents. There is also no evidence in the record about the City's training policies or the training, if any, received by the officers. In addition, to the extent Plaintiff's claim is premised on a tacit-endorsement theory, his claim fails because, even if he submitted evidence of prior incidents involving excessive force and such evidence was sufficient to establish a pattern, Plaintiff has not pointed to any evidence suggesting that the City had knowledge of the prior violations and choose deliberately to ignore them. Accordingly, Plaintiff's municipal liability claim fails because he has failed to put forth any evidence, let alone sufficient factual allegations, to support his claim.

## IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**

                                          s/Nancy G. Edmunds
                                          Nancy G. Edmunds
                                          United States District Judge

Dated: June 5, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2019, by electronic and/or ordinary mail.

                                          s/Lisa Bartlett
                                          Case Manager